IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THEODORE GLADYSZ,

    Plaintiff,

v.                                                 Civil Action No. 3:08cv64
                                                  (Judge Bailey)

GEORGE TRENT, C.O. JACOBY,
C.O. MCCLAIN, C.O. GASKINS,
C.O. ELDERS, C.O. MCCRAY,

    Defendants.

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this action on March 25, 2008, by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. In the complaint, the plaintiff alleges that the defendants violated his constitutional rights. In support thereof, the plaintiff alleges that the defendants used excessive force against him, were deliberately indifferent to his serious medical needs and verbally harassed and threatened him. On April 29, 2008, the undersigned conducted a preliminary review of the file and made the following recommendations:

(1) the plaintiff claim against defendant Elders be dismissed with prejudice for the failure to state a claim;

(2) the plaintiff's claims of verbal threats and harassment be denied with prejudice for the failure to state a claim; and

(3) that plaintiff's claims of excessive force and deliberate indifference proceed against defendants Trent, Jacoby, McClain, Gaskins and McCray.

No objections to the Report and Recommendation ("R&R") were filed. Therefore, on May 22, 2008, the Honorable John Preston Bailey, United States District Judge, reviewed the R&R for clear error. Finding none, Judge Bailey adopted the R&R in its entirety, dismissed with prejudice, defendant Elders and the plaintiff's claims of verbal threats and harassment, and directed that service of process be effected upon the remaining defendants by the United States Marshal Service. The docket reflects that service was made upon defendants Trent, Jacoby, Gaskins and McCray on June 5, 2008, and upon defendant McClain on June 17, 2008.

On June 25, 2008, the defendants filed an Answer to the complaint, wherein they deny that any violation of the plaintiff's constitutional rights occurred. Accordingly, on July 1, 2008, the undersigned issued a Scheduling Order setting forth the deadlines for discovery and dispositive motion filing.

On September 2, 2008, the plaintiff filed a response in opposition to the defendants' answer. Moreover, on November 3, 2008, the plaintiff filed affidavits and other documents in support of his claims.

On February 6, 2009, the Court appointed counsel for the plaintiff and extended the deadlines set in the scheduling order. The new deadlines were as follows: discovery to be completed by June 6, 2009; and dispositive motions filed by July 6, 2009. Any memoranda in opposition to a dispositive motion was due on July 21, 2009.

On June 29, 2009, the defendants filed a Motion for Summary Judgment and Memorandum in support. The plaintiff did not file a response and the time for doing so has elapsed. Thus, this case is before the undersigned for an R&R on the defendants' summary judgment motion.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff asserts that on April 1, 2007, he was maced and severely beaten by defendants Jacoby, McClain and Gaskins. As a result, the plaintiff asserts that his middle finger on his left hand was broken, his left shoulder was injured and that he suffered a pinched nerve in his neck and unspecified knees injuries. In addition, the plaintiff asserts that he was repeatedly poked in the eyes and ribs and that he received multiple bruises and lacerations.

Afterwards, the plaintiff asserts that although he was screaming in pain and asking for water to stop the burning caused by the mace, he was then cuffed and shackled and taken to the recreation yard where defendants Jacoby, McClain and Gaskins played cruel games with him. For example, the plaintiff asserts that he was directed to walk one complete lap around the recreation yard, while shackled and cuffed, without talking, crying or making any noise at all. The plaintiff alleges that every time he successfully completed a lap, he was given one splash of water on his burning face. If he made a noise, or did not follow the rules of the game, the plaintiff asserts that he did not receive any water and that he had to start all over again. The plaintiff asserts that this game went on for about 45 minutes while defendants Jacoby, McClain and Gaskins, laughed.

Once he was taken inside, the plaintiff asserts that he was stripped to his underwear and left in a cold cell for two days with no running water, no bedding or blankets, or anything else. When he complained that he was cold, or asked for water, the plaintiff was told to "keep his mouth shut" or he would get "sprayed" again. When the plaintiff told defendant Trent of the events previously described, defendant Trent allegedly told the plaintiff to keep his mouth shut or things would get worse.

During this same time, the plaintiff asserts that defendant McCray would not allow him access to his knee braces or medical shoes, which were allegedly prescribed by a doctor, and needed for the plaintiff to walk. When the plaintiff told defendant McCray that his knee braces and shoes were medically necessary, and had been approved by the administration, defendant McCray allegedly threatened the plaintiff verbally.

Besides the physical injuries already described, the plaintiff asserts that he also suffers from emotional and psychological injuries from the events described in the complaint.

As relief, the plaintiff seeks declaratory, compensatory and punitive damages against all of the defendants.

## B. The Defendants' Summary Judgment Motion

In their motion for summary judgment, the defendants assert that on April 1, 2007, the plaintiff was in the special management unit at the North Central Regional Jail due to his involvement in an inmate on inmate fight earlier that year. At approximately 11:30 p.m., the inmate and his cell mate, threw bars of soap out of their room and at the corrections officers supervising inmate hygiene in that section. The defendants assert that after the plaintiff's cell mate was escorted from the cell, officers Jordy and McClain told the plaintiff to lie on the floor and place his hands behind his back. When the plaintiff failed to comply, the officers directed that the cell door be opened. They also gave the plaintiff loud verbal commands to lie on the floor and place his hands behind his head. The plaintiff again refused to comply. Therefore, defendant McClain administered a one half second burst of O.C. aerosol to the plaintiff's face. Corporal Gaskins took advantage of the distraction to force the plaintiff to the floor where he was handcuffed. The defendants assert that the plaintiff was then taken to the A pod recreation yard for decontamination. The defendants further

assert that the plaintiff was "evaluated" by a nurse and taken to an intake cell for "15-minute watch."

Although the defendants concede that force was used, they assert that such force was justified because the plaintiff was engaged in violent and disruptive behavior, defied the orders of staff, attacked an officer and was a clear danger to himself and others. Moreover, the defendants assert that the amount of force used to control the plaintiff was reasonable under the circumstances. The defendants further acknowledge that the control techniques used against the plaintiff can cause physical discomfort and even injury. However, the defendants assert that the "empty hand control[,] used in conjunction with the O.C." spray, was minimal and reasonable given the situation.

In addition, the defendants argue that the plaintiff has not produced evidence of serious or significant physical injury. In fact, the defendants assert that the plaintiff can point to no injury which arises from his stay at the regional jail.

As to the plaintiff's claims of deliberate indifference, the defendants assert that the plaintiff is merely dissatisfied with the health care treatment he received. The defendants assert that the plaintiff has made no allegation of a serious medical problem and that in fact, the plaintiff did receive medical treatment during his stay at the regional jail. Thus, the defendants assert that the plaintiff's allegations are insufficient to state a claim of a violation of a constitutional right.

Finally, the defendants assert that the plaintiff's claims are barred by the doctrines of qualified or official immunity. Specifically, the defendants assert that they exercised their discretionary duty, and that their actions did not go beyond, nor were they inconsistent, with such discretionary duties. In addition, the defendants assert that the plaintiff has failed to show that they acted inconsistent with well-established law or that they abused their official discretion. Therefore, the defendants assert that they are entitled to immunity from suit.

## III. Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

### A. Excessive Force

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991).

In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321-22 (1986). In order for a plaintiff to prove a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), cert. denied, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering. Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

7

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) the threat reasonably perceived by the responsible official; and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; see also Williams, 77 F. 3d at 762.

Moreover, in the Fourth Circuit, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Norman, 25 F.3d at 1263.[1] A *de minimis* injury reveals that *de minimis* force was used. Id. at 1262. However, the Fourth Circuit has also acknowledged that in certain circumstances a claim may be made even if the injury is *de minimis*. Specifically, the Fourth Circuit has stated:

> There may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. *Cf.* Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury). In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,' and thus expressly outside the *de*

---

[1] In Norman, a jail officer began swinging his cell keys in the direction of the prisoner's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face, and the keys hit his right thumb causing his right hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used.

Further, the Fourth Circuit found in Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), cert. denied, 525 U.S. 1181 (1999), that the detainee's medical records revealed that as a result of the incident, the detainee suffered from "abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs and some excoriation of the mucous membranes of the mouth" and that such injuries were *de minimis*.

On the other hand, the United States Supreme Court has found that "bruises, swelling, loosened teeth and a cracked dental plate" are not *de minimis*. Hudson 503 U.S. at 10.

8

*minimis* force exception, see Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 (citations omitted), or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

Norman, at 1264, n. 4.

In this case, the following facts are not in dispute:

(1) There was a disturbance in plaintiffs' cell that involved throwing soap.

(2) Officers responded and took the plaintiff's cell mate from the cell.

(3) Force was used to subdue the plaintiff, including O.C. spray.

(4) The plaintiff was taken to the recreation yard and later put in a different cell.

(5) The plaintiff sustained some physical injury as a result of the force used.

However, reading the facts in the light most favorable to the plaintiff, the following questions of fact remain:

(1) Did the plaintiff participate in the disturbance in his cell, *i.e.*, soap throwing?

(2) How much force was used to subdue the plaintiff?

(3) Was that force excessive?

(4) What was the extent of the plaintiff's injuries?

(5) Was he appropriately examined and treated by medical staff after the incident?

(6) What occurred in the recreation yard?

(7) Under what conditions was the plaintiff held after the incident occurred?

Because of the multitude of factual questions that remain, summary judgment is not appropriate at this time. First, there are conflicting allegations about the need for force. Moreover, the type and extent of force used is contested. Third, the defendants acknowledge that the plaintiff was taken to the recreation yard after the incident. However, the defendants do not address the

plaintiff's allegations regarding the cruel games that were allegedly played.

Fourth, although the defendants provide incident reports written by themselves and others, they provide no affidavits, sworn under penalty of perjury, attesting to the facts as they see them. Fifth, although the defendants provide an incident report written by the nurse who allegedly examined the plaintiff after the incident, that report shows that the examination of the plaintiff was cursory at best. In addition, it shows that the plaintiff had at least some physical injuries. Nonetheless, the defendants provide no affidavit from the nurse to contradict the affidavit filed by the plaintiff's father. The affidavit from the plaintiff's father asserts that four days after the incident occurred, the plaintiff's father could not even recognize his own son because he was so badly bruised and beaten.

Sixth, the defendants do not address the plaintiff's claims regarding being held in a cell without clothes or other amenities after the incident occurred. There are simply to many questions that remain for summary judgment to be appropriate as to the plaintiff's excessive force claims.

## B. Deliberate Indifference to Serious Medical Needs

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's

attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing

Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

Here, the plaintiff makes two deliberate indifference claims. The first involves the care he received after the incident on July 1, 2007. The second involves the denial of his knee braces. As to the care the plaintiff received after the July 2007 incident, as previously noted, the documentation provided by the defendants show that their examination of the plaintiff on that date was cursory at best. The plaintiff alleges extensive injuries that, if true, likely would have required more care than was given. Moreover, there is a question of fact as to the extent of the plaintiff's injuries and the type of care that would have been necessary to treat those injuries. The injuries described by the plaintiff, and supported by his father's affidavit, show a serious medical need. Because questions of fact remain, summary judgment is not appropriate.

As to the plaintiff's knee braces, the documentation provided by the plaintiff shows that his knee braces were approved by the administration. However, he was denied those knee braces by defendant McCray. The defendants offer no explanation for the denial of the braces. In fact, the defendants only generally deny either of the plaintiff's deliberate indifference claims. Thus, there is a question of fact remains as to why defendant McCray denied the plaintiff his knee braces, even after those braces were approved for use by the administration. Accordingly, summary judgment is not appropriate as to this claim.

## C. **Qualified and Official Immunity**

As to the defendants claims of qualified and official immunity, the undersigned finds that neither is applicable in this case. As to official immunity, "official capacity suits generally represent an action against an entity of which an officer is an agent . . ." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978). Moreover, the Eleventh Amendment bars suits against the State unless

the State has waived its immunity. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989). In this case, claims against the defendants in their official capacities would be claims against the state and thus, barred by Eleventh Amendment immunity. However, the plaintiff does not sue the defendants in their official capacities. In fact, the complaint specifically states that the defendants are being sued in their individual capacities. In addition, the severe beating and cruel punishment described in the complaint are clearly not a part of any of the defendants official duties.

As for the defendants' defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The two-part test for qualified immunity is whether (1) the facts alleged "show [that] the officer['s] conduct violated a constitutional right;" and (2) the constitutional right in question was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-202 (2001).

Here, the undersigned has already found that the conduct alleged in the complaint would violated the plaintiff's constitutional rights if proved. Moreover, there are material issues of fact which remain unresolved, prohibiting a grant of qualified immunity at this stage. In addition, it was clearly established on April 1, 2007, that the wanton infliction of pain such as alleged in the complaint was unlawful conduct. See Hudson v. McMillian, 503 U.S. at 5, Whitley v. Albers, 475 U.S. at 319. It was also clearly established on that date that the failure to provide the plaintiff with necessary and adequate medical care is unlawful conduct. See Estelle v. Gamble, 429 U.S. at 104. Accordingly, the defendants are not entitled to the defense of qualified immunity.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion for Summary Judgment (dckt. 55) be **DENIED** and this case be set for trial.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to counsel of record via electronic mean and to the plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: August 24, 2009.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE